# GALLUP v. SCHMIDT.

## ERROR TO THE CIRCUIT COURT OF MARION COUNTY, INDIANA.

No. 100.  Argued October 31, November 1, 1901.—Decided January 6, 1902.

Edward P. Gallup, a resident in the State of New Hampshire, acted as the
executor of the will of William P. Gallup, deceased, of the county of
Marion in the State of Indiana. He was served with notice, under sec-
tions 8560 and 8587 of the Revised Statutes of Indiana, of an intention of
the county auditor in that county to add to the list of the taxable per-
sonal property in his possession as executor, and was required to appear
and show cause why that should not be done. The Supreme Court of
Indiana held, against his objection, that he was at the time that the pro-
ceeding by the auditor began, an official resident of Marion County, and
was therefore within the express terms of the statute. *Held* that this
was a construction or application of the statute to the case in hand which
was binding on this court.

The method followed by the auditor in assessing the additional taxes was,
perhaps, open to criticism, but was approved by the Circuit and Supreme
Courts of the State, and presents no question over which this court has
jurisdiction.

THIS was a writ of error to a judgment of the circuit court of
Marion County, State of Indiana, entered in pursuance of a final
judgment of the Supreme Court of that State, in a case wherein
Edward P. Gallup, executor of William P. Gallup, deceased,
was plaintiff in error, and William H. Schmidt, treasurer of said
Marion County, was defendant in error.

The main facts in the case were thus stated in the opinion of
the Supreme Court, 154 Indiana, 196:

"William P. Gallup, having for thirty-one years been a resi-
dent therein, died, testate, in the city of Indianapolis, Marion
County, in December, 1893, the owner and in possession of a
large personal estate in said county. The will was duly ad-
mitted to probate in the Marion circuit court, and Edward P.
Gallup, a resident of the State of New Hampshire, the princi-
pal and residuary legatee, was qualified as executor in Janu-
ary, 1894, and March 5, 1894, filed an inventory showing a per-
sonal estate of $492,628.26. Subsequently, in the spring of 1894,

said executor listed to the assessor for taxation for the year 1894 personal property of the estate aggregating $383,906.46. On January 15, 1895, Taggart, then auditor of Marion County, discovered, on what he believed to be credible information, that a large amount of personal property belonging to and in possesssion of said decedent had not been listed for taxation for the years 1881 to 1893 inclusive; and, upon that day, acting under section 8560, Burns' R. S. 1894, caused to be served by the sheriff upon Edward P. Gallup, as executor, who was at the time in Indianapolis, engaged in the settlement of said estate, notice in writing of his intention to add such omitted property to the tax duplicate, and requiring such executor to appear before him within five days to show cause, if any, why such property should not be so added. The notice specified the property to be added as county, township, town, and other bonds, notes, mortgages, claims, dues, demands and other credits, money on hand and on deposit.

" January 19, 1895, the executor appeared before the auditor and filed written objections to the authority of the auditor to proceed further, which were overruled. The executor then filed an answer to the notice, and on the 21st day of January, 1895, the auditor issued a subpœna for the executor, requiring him to appear forthwith before him and to bring with him all notes, mortgages and bonds in his possession, as such executor, to testify in said proceeding. The executor appeared on the 24th day of January, 1895, and filed further objections to the jurisdiction of the auditor, which were overruled; and thereupon he was examined under oath.

" Upon consideration of the evidence the auditor found that William P. Gallup, in addition to the property returned by him for taxation, was the owner and in possession of other taxable personable property not listed and not taxed during the several years from 1881 to 1893 specifically stated for each year, and on January 25, 1895, placed the same upon the tax duplicates, and computed and extended taxes thereon for the whole of said period, including statutory penalties and interest, the sum of $61,233.59. After the same was placed upon the duplicate in the treasurer's hands he made demand upon the said executor

to pay said additional taxes, but he refused to pay all or any part thereof.

"The executor on the 4th day of January, 1895, filed in the Circuit Court his final settlement report, and gave notice that the same would be finally heard on the 25th day of January, 1895; and upon the day set for hearing of the report, the same being the next day after the additional assessments had been placed upon the duplicate, Holt, as treasurer of Marion County, filed in said court, under sec. 8587, Burns' R. S. 1894, in the term thereof that was then running, his petition for an order upon the executor to show cause why he should not pay the taxes assessed by the auditor. The order was granted, and on February 9, 1895, the executor appeared and filed his motion to dismiss the said proceedings for the reason that the court had no jurisdiction to proceed to hear the cause, for the reason that the county treasurer was not authorized, under the law, to present said claim to the court at the January term, 1895. .

"More than two years afterwards, to wit, December 16, 1897, the court overruled the executor's motion to dismiss; and on June 18, 1898, the executor filed his answer in eight paragraphs. A demurrer to the third, fourth and sixth was sustained, and a trial was had before the court upon the issues joined upon the petition, answer of general denial, payment and set-off, and, upon a special finding of facts and conclusions of law favorable to the treasurer, judgment was rendered against the executor that he pay to the treasurer on account of said omitted taxes the sum of $46,996.69."

Appeals were taken by both parties from the decree of the Circuit Court of Marion County to the Supreme Court of the State. That court was of opinion that the executor, as appellant, was not entitled to a reversal, but that, for error of the Circuit Court in allowing the executor a certain credit of $5750 upon the amount recovered, the judgment must be reversed with instructions to restate conclusions of law in accordance with the opinion of the Supreme Court, and render judgment thereon in favor of the treasurer for the sum of $52,746.69, with interest from October 31, 1898; and final judgment for said amount was accordingly so entered by the Circuit Court of

Marion County, to which judgment a writ of error was allowed and the cause brought to this court.

*Mr. W. H. H. Miller* and *Mr. Wayne MacVeagh* for plaintiff in error. *Mr. John B. Elam*, *Mr. James W. Fesler* and *Mr. Samuel D. Miller* were on their brief.

*Mr. William L. Taylor* and *Mr. William A. Ketcham* for defendant in error. *Mr. Martin M. Hugg*, *Mr. Frederick A. Joss*, *Mr. Merrill Moores* and *Mr. Cassius C. Hadley* were on their brief.

Mr. Justice Shiras, after making the above statement, delivered the opinion of the court.

To answer the questions presented to us in this record requires an examination of two sections of the Indiana Revised Statutes, which read as follows:

" Sec. 8560. Whenever the county auditor shall discover or receive credible information, or if he shall have reason to believe that any real or personal property has, from any cause, been omitted in whole or in part in the assessment of any year or number of years, from the assessment book, or from the tax duplicate, he shall proceed to correct the tax duplicate, and add such property thereto, with the proper valuation, and charge such property and the owner thereof with the proper amount of taxes thereon, to enable him to do which he is invested with all the powers of assessor under this act. But before making such correction or addition, if the person claiming to own such property, or occupying it, or in possession thereof, resides in the county and is not present, he shall give such person notice, in writing, of his intention to add such property to the tax duplicate, describing it in general terms, and requiring such person to appear before him at his office at a specified time, within five days after giving such notice, and to show cause, if any, why such property should not be added to the tax duplicate; and if the party so notified does not appear, or if he appears and fails to show any good and sufficient cause why such

assessment shall not be made, the same shall be made, and the county auditor shall, in all cases, file in his office a statement of the facts or evidence on which he made such correction; but he shall in no case reduce the amount returned by the assessor, without the written consent of the auditor of state, given on the statement of facts submitted by the county auditor."

"SEC. 8587. It shall be the duty of every administrator, executor, guardian, receiver, trustee or person having the property of any decedent, infant, idiot or insane person in charge, to pay the taxes due upon the property of such decedent, ward or party, and, in case of his neglecting to pay any installment of taxes when due, when there is money enough on hand to pay the same, the county treasurer shall present to the circuit or other proper court of the county, at its next term thereafter, a brief statement in writing, signed by him as such county treasurer, setting forth the fact and amount of such delinquency, and such court shall at once issue an order directed to such delinquent, commanding him to show cause within five days thereafter why such tax and penalty and costs should not be paid, and, upon his failing to show good and sufficient cause for such non-payment, the court shall, order him to pay such tax out of the assets in his hands belonging to the estate of said decedent, ward or other person; and such delinquent shall not be entitled to any credit, in any settlement of said trust, for the penalty, interest and cost occasioned by such delinquency, or by the order to show cause, but the same shall be a personal charge against him, and he shall be liable, on his official bond, for such penalty, interest and costs."

Having alleged that he was and during all of his life had been a citizen of the United States, and that at no time during the year 1894 or since has he resided in Marion County, Indiana, but that during said year and ever since he has continually been and still was a resident and citizen of Lebanon, in the State of New Hampshire, Edward P. Gallup claimed, in the courts below, that in section 8560, providing for the assessment of omitted property by the county auditor, no provision whatever is made for notice to any person not a resident of the county in which said omitted property is proposed to be as-

sessed, but that the sole provision for such notice is to person or persons resident of such county, and that by reason of the premises said statute is in violation of the Fourteenth Amendment to the Constitution of the United States, in that said statute deprived him of his property without due process of law; denied to him the equal protection of the laws; also denies to him, as a citizen of New Hampshire, the privileges and immunities enjoyed by a citizen of Marion County, Indiana, contrary to the second section of article 4 of the Constitution of the United States; and that said statute is further invalid in that it grants to a class of citizens, namely, residents of the particular county in which the property sought to be assessed is situate, privileges and immunities which, upon the same terms, do not equally belong to all citizens.

This arraignment of the statute is based on the fact that Edward P. Gallup, though acting as executor of William P. Gallup, deceased, in the county of Marion, Indiana, was, at the time he was served with the auditor's notice, not a resident of that county, but was a resident of the State of New Hampshire; and the contention is that, though he received such a notice, yet he was not within the letter of the statute because not a resident of the county in which the property was situated, and therefore the notice actually given him was not a notice in point of law, and the auditor in proceeding with the duties of his office acted without jurisdiction, and that consequently the plaintiff in error has been deprived of his property without due process of law.

The Supreme Court of Indiana disposed of this contention by holding "that Edward P. Gallup was an official resident of Marion County at the time the proceeding by the auditor was begun, and therefore within the express terms of this section."

This construction of the section is criticized by the learned counsel of the plaintiff in error as novel, and unsupported by authority. However this may be, it is a construction or application of the statute to the case in hand and is binding upon us.

It is strongly urged that, whether the view of the Indiana Supreme Court be sound or not, in interpreting the section to

cover the case of an official residence, the result is to deprive the plaintiff in error of rights and privileges secured to him by the Constitution of the United States, and numerous cases are cited to the effect that assessments and special burdens upon taxpayers are void unless the law provides for notice, and that notice in fact is not equivalent to notice in law. It is claimed that the plaintiff in error has been afforded no opportunity to be heard, and that, because the section provides for notice to residents of the county, and for no notice whatever to non-residents of the State and county, a case of discriminative legislation is created whereby non-residents are denied the equal protection of the laws.

To these suggestions the Supreme Court of Indiana replied by saying:

"He, Gallup, was in a situation to avail himself of all the rights and privileges he asserts are unjustly denied to non-residents, and, while himself not aggrieved, he will not be permitted to assail a revenue statute on behalf of others who are making no complaint. The courts are open to those only who are injured. . . . Conceding all that appellant affirms concerning his residence and the absence of any provisions in section 8560 for service of notice on non-residents, still he is not in a condition to complain that he has had no day in court. The assessment by the auditor, right or wrong, was not a final judgment. It was only *prima facie* correct. The courts were open to appellant, even though a non-resident, to challenge it by injunction. Failing to thus seek relief against it, the treasurer appealed to the circuit court for an order against him to show cause why he did not pay the taxes. The jurisdiction of the circuit court over its executor will not be controverted, even though his personal residence is in New Hampshire. He was ordered by the court to show cause, if he had any, why he did not pay the taxes. In response to the order any defence he had or ever had was open to him.

"It is no longer an open question in this State that if a party against whose property an assessment has been made is, at any time in the course of the proceeding before a conclusive judg-

ment, afforded by law an opportunity to contest its correctness, he is accorded due process of law."

It has frequently been held by this court, when asked to review tax proceedings in state courts, that due process of law is afforded litigants if they have an opportunity to question the validity or the amount of an assessment or charge before the amount is determined, or at any subsequent proceedings to enforce its collection, or at any time before final judgment is entered. *Walker* v. *Sauvinet,* 92 U. S. 90; *Davidson* v. *New Orleans,* 96 U. S. 97; *Spencer* v. *Merchant,* 125 U. S. 345; *Allen* v. *Georgia,* 166 U. S. 138; *Orr* v. *Gilman, ante,* 278.

In the present case the plaintiff in error not only had an opportunity to appear and to set up any defence that he may have had, but actually did appear, and, after his demurrers and motion to dismiss had been overruled, answered and was fully heard in the trial court. His objections to the findings and rulings of that court have been heard and considered by the Supreme Court of the State.

The method followed by the auditor in assessing the additional taxes was, perhaps, open to criticism, but was approved by the Circuit and Supreme Courts, and presents no question over which we have jurisdiction.

Failing to see that any rights or privileges secured to the plaintiff in error by the Constitution of the United States have been denied him, we are of opinion that the judgment of the Supreme Court of Indiana must be

*Affirmed.*